## JAMES AYER 2d. *versus* HEZEKIAH CHASE *et al.*

Where the plaintiff put his apprentice into the service of another person exercising the plaintiff's trade, for a short time, on wages to be paid to the plaintiff, and during that period the apprentice absconded and went to sea, it was *held*, that by such transfer of the apprentice the plaintiff's right to his services was suspended, and that it did not revive upon his absconding, so as to entitle the plaintiff to his earnings on the voyage.

ASSUMPSIT to recover the earnings of William Norris on board the ship Louisa, owned by the defendants.

On a case stated, it appeared, that the plaintiff was a carpenter, residing in Haverhill, and that Norris became his apprentice by an indenture executed by the plaintiff and by Norris and his father, in 1832, until Norris should arrive at the age of twenty-one, which would be in March 1837.   In 1834 the plaintiff agreed, first with a carpenter in Lowell, and afterwards with one Emerson, a carpenter in Boston, to take the apprentice into their service, on wages to be paid to the plaintiff. The apprentice stayed with the carpenter in Lowell about a month, and with Emerson about six weeks.   The agreement with Emerson was, that the apprentice should work with him a month, but at the request of Emerson and the apprentice he was suffered to remain longer.   While he was at work under the charge of Emerson he absconded, and assuming the name of William Smith, he shipped on board the Louisa, then lying in Boston and bound on a whaling voyage to the Pacific Ocean. He sailed on that voyage and returned in 1836, and received from the defendants his share of the profits, being about $ 100. The defendants were ignorant that he was an apprentice, until after they had paid him.   The plaintiff advertised Morris in a

Boston newspaper, as a runaway apprentice, immediately after he left Emerson.

Ayer
v.
Chase.
Nov. 9th.

*Saltonstall,* for the defendants, to the point that the plaintiff, by transferring the apprentice, had lost the right to his services and earnings, cited *Hall* v. *Gardner,* 1 Mass. R. 172; *Davis* v. *Coburn,* 8 Mass. R. 299; *Coventry* v. *Woodhall,* Hob. 134; *The King* v. *Stockland,* 1 Doug. 70; *Randall* v. *Rotch,* 12 Pick. 107; Bac. Abr. *Master and Servant, E.*

*Choate,* for the plaintiff, said the transfer might have warranted an application to the Court of Common Pleas to annul the indenture, but that by itself it did not dissolve the relation of master and apprentice subsisting between the plaintiff and Morris.

WILDE J. delivered the opinion of the Court. In deciding this case we do not think it necessary to consider one of the questions which has been argued, namely, whether the lad for whose labor and services the plaintiff claims to recover wages, was in the first place legally bound to him as an apprentice or not. For admitting that he was, we are of opinion that the plaintiff's right to his services was suspended when he undertook to assign him to the custody and control of another; and that his right did not revive by the absconding of the apprentice.

May term,
1838.

Where a parent binds his child as an apprentice to learn a trade, and for the purpose of suitable education and instruction, he must be presumed to rely upon the knowledge he has of the character of the master, and the confidence he has in his integrity and ability. By such a contract the master acquires an important and interesting trust, which is personal and cannot be assigned. It is truly said in *Bedel* v. *Constable,* Vaugh. 177, that "a more near and tender trust cannot be, than the custody and education of a man's child." The master, by such a fiduciary contract, is bound not only to instruct his apprentice in his trade or calling, but to be careful of his health, and to attend to his education and morals; and for these purposes he is bound to have him under his own care and inspection, unless by the terms of the contract of apprenticeship it is otherwise agreed. These principles are unquestionable, and are fully established by the case of *Davis* v. *Coburn,* 8 Mass. R. 299,

47*

and the cases therein cited. It follows, therefore, that the plaintiff, by transferring his apprentice to the service of a carpenter in Lowell on wages, and afterwards to another carpenter in Boston, was guilty of a breach of trust confided to him by the father of the apprentice, which may have been most injurious to the morals, steady habits and well-being of the young man. These carpenters acquired by the transfer no right to the services of the apprentice and he was at liberty to leave them at any time ; and although the plaintiff might reclaim him, he was not bound to return voluntarily to his master.

This distinguishes the present case from that of *James* v. *Le Roy et al.* 6 Johns. R. 274, in which it was decided, that where an apprentice is employed without the knowledge or consent of the master, the master is entitled to all his earnings, whether the person who employed him did or did not know that he was an apprentice. This decision was a hard one for the defendants in that case, although it seems to be maintained by the authorities. But in case of a hired servant, it is admitted, that the employer must have notice, to make him answerable. In *James* v. *Le Roy et al.*, however, the master had been guilty of no fault or breach of trust, whereas in the present case it was in consequence of the plaintiffs' breach of his duty, that the apprentice had an opportunity to ship himself on board the defendants' vessel. The defendants can be charged with no fault. They were ignorant of the fact, that the party shipping was the plaintiff's apprentice, and they have paid him his full share of the profits of the voyage.

To decide for the plaintiff, under these circumstances, would be to permit him to take advantage of his own wrong, to the prejudice of an innocent party, which cannot be allowed.

*Plaintiff nonsuit.*